IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEW STREAM SECURED CAPITAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 11-10753 (MFW)<br>(Jointly Administered)<br><br>*Refers to Docket No. 58* |

## ORDER ON CONSENT (I) APPROVING BID INCENTIVES INCLUDING BREAK-UP FEE, (II) ESTABLISHING SALES PROCEDURES AND (III) GRANTING RELATED RELIEF

This matter having come before the Court on the Motion of the above-captioned Debtors for an Order (i) Approving Bid Incentives Including Break-Up Fee, and (ii) Establishing Sales Procedures and (iii) Granting Related Relief (the "Motion") [D.I. 58][2] with respect to the Debtors' Insurance Portfolio Sale; and the Court having reviewed the Motion and having heard the statements of counsel regarding the relief requested in the Motion at a hearing before the Court held on April 25, 2011 (the "Hearing"); and the Court having considered: (a) *the Objection of Certain US/Cayman Investors to Debtors' Motion for Entry of an Order (i) Approving Bid Incentives, Including Break-Up Fee and (ii) Granting Related Relief* (the "US/Cayman Objection") filed on April 4, 2011 [D.I. 147]; (b) the Objection of the United States Trustee [D.I. 133], and (iii) the *Objection of Official Committee of Unsecured Creditors of New Stream Secured Capital Inc., et al., to Debtors' Motion for Entry of an Order (i) Approving Bid Incentives, Including Break-Up Fee and (ii) Granting Related Relief* (the "Committee Objection") [D.I. 181]; and the Court finding that (a) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: New Stream Secured Capital, Inc. (3903), New Stream Insurance, LLC (6966), New Stream Capital, LLC (0364) and New Stream Secured Capital, L.P. (2948). The corporate address of the Debtor is 38C Grove Street, Ridgefield, CT 06877.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

proceeding pursuant to 28 U.S.C. §§ 157(b)(2), (c) notice of the Motion and the Hearing was sufficient under the circumstances and (d) for the reasons stated in the Motion and on the record at the Hearing, it appearing that the relief requested in the Motion is in the best interests of the Debtors, their creditors, and all parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is GRANTED as set forth below and, to the extent not withdrawn, resolved or settled, each of the Objections is overruled.

2. Notwithstanding anything contained in the Motion or the Purchase Agreement to the contrary, the procedures for the sale of the Insurance Portfolio set forth in the *Stipulation and Order Resolving Objection of the Official Committee of Unsecured Creditors of New Stream Capital, Inc., et al., to (A) Motion of Debtors for Entry of Order (i) Approving Debtor-In-Possession Financing Pursuant To 11 U.S.C. §§ 105(A), 362, and 364 and Fed. Bankr. P. 2002, 4001 and 9014 and Local Bankruptcy Rule 4001-2; (ii) Authorizing Use Of Cash Collateral Pursuant To 11 U.S.C. §§ 105, 361, 362 and 363 of the Bankruptcy Code; (iii) Granting Adequate Protection and Superpriority Administrative Claims; (iv) Scheduling A Final Hearing; and (v) Granting Related Relief and (B) Debtors' Motion For Entry of an Order (i) Approving Bid Incentives, Including Break-Up Fee, and (ii) Granting Related Relief* (the "Stipulation and Order"), the terms of which are incorporated herein, shall apply.

3. On or before April 27, 2011, the Debtors shall file a motion pursuant to, *inter alia*, 11 U.S.C. §363(b), to present to the Court, upon notice to all parties entitled thereto, a motion for approval of the sale of the Insurance Portfolio (the "Sale Motion") seeking approval of the sale of the Insurance Portfolio to Purchaser on the following terms and conditions:

(a) The Creditors' Committee shall be permitted to solicit, market, facilitate, encourage, negotiate, and pursue a competing offer for the Assets (as defined in the Purchase Agreement) that is higher or better than the terms of those contained in the Purchase Agreement (each, a "<u>Competing Transaction</u>"), subject to the following requirements:

(1) No Competing Transaction shall be acceptable if it is subject to due diligence by the purchaser thereunder or contingent upon such purchaser obtaining financing.

(2) Any Competing Transaction shall have an initial overbid of at least $20,325,000 (consisting of the Break-up Fee, the Expense Reimbursement (both as defined below) and an additional $15 million) over and above the Purchase Price (as defined in the Purchase Agreement), <u>plus</u> the amount of outstanding unpaid amounts owed under any debtor-in-possession financing, including "rolled-up" pre-petition loans by Purchaser ("<u>Initial Overbid</u>").

(3) The deadline for the submission of any bid for a Competing Transaction by any third party wishing to participate in the Auction (as defined below) shall be 5:00 p.m. prevailing Eastern time, on May 13, 2011 (the "<u>Bid Deadline</u>"), and the Debtors shall not permit any third party to participate in the Auction if it submits a bid thereafter, nor shall the Debtors consider any bid that is not initially submitted prior to the expiration of the Bid Deadline.

(4) In the event one or more bids for a Competing Transaction is submitted by the Bid Deadline, which (i) meets the initial overbid threshold, (ii) provides satisfactory evidence to the Debtors and the Committee that such purchaser has the financial wherewithal to pay the purchase price, and (iii) is not

subject to due diligence or conditioned upon obtaining financing (each, a "Qualifying Bid"), then the Debtors and the Creditors' Committee shall hold an auction (the "Auction") on May 16, 2011, at a place and time to be determined, at which MIO and all parties that submitted Qualifying Bids shall be entitled to increase their respective offers and otherwise improve their respective purchase agreements. After the Initial Overbid all subsequent bids shall be in $500,000 increments or more.

(5) At the conclusion of the Auction, the Debtors, in consultation with the Creditors' Committee, shall determine the highest or best offer for the Assets (as defined in the APA), taking into account, among other things, the Break-up Fee and Expense Reimbursement that would be payable in the event a Competing Transaction is ultimately selected.

(6) If a Competing Transaction shall be selected as the winning bid, the purchaser of such Competing Transaction shall be required to pay a $5,000,000 non-refundable (subject only to final Court approval) deposit on or before May 18, 2011 (the "Deposit").

(7) The closing date for a sale under a Competing Transaction shall be not later than June 2, 2011.

(8) If a Competing Transaction is approved by this Court on or prior to May 18, 2011, the Purchaser will keep its offer open under the Purchase Agreement and remain as back-up purchaser up to and including the earlier to occur of (i) the closing of such Competing Transaction and (ii) June 4, 2011.

4. In the event that the Insurance Portfolio is sold in any Competing Transaction (as defined in the Stipulation and Order), Purchaser shall be entitled to the Break-Up Fee and

Expense Reimbursement, as defined herein below, which shall be allowed as an administrative claim against the Debtors pursuant to Bankruptcy Code section 503(b)(1)(A):

    (a)    the Purchaser will be entitled to receive a break-up fee of $3,825,000 (the "Break-Up Fee") following consummation of a Competing Transaction.

    (b)    the Purchaser will be entitled to receive expense reimbursement up to $1,500,000 for documented, reasonable, out-of-pocket expenses incurred by the Purchaser in connection with the Purchase Agreement (the "Expense Reimbursement") following consummation of a Competing Transaction. Prior to payment of the Expense Reimbursement, the Purchaser shall serve a written itemized list of expenses, in sufficient detail to permit assessment of reasonableness of attorneys' fees (including number of hours per billing attorney), upon counsel for (i) the Debtors, (ii) the Committee, (iii) the objecting US/Cayman investors, (iv) the NSI and NSSC receivers and (v) the Office of the United States Trustee (the "Notice Parties"). Unless one or more of the Notice Parties files a written objection to the claimed Expense Reimbursement with the Court by not later than the 10th day following service of the Purchaser's written itemization of expenses, the Debtors shall pay the claimed Expense Reimbursement to the Purchaser.

5.     The Debtors shall not permit any third party to participate in the Auction if it submits a bid after the Bid Deadline, nor shall the Debtors consider any bid that is not initially submitted prior to the expiration of the Bid Deadline.

6.     The hearing on the Sale Motion shall be held before the Bankruptcy Court on May 16, 2011 at 11:30AM. Objections to the Sale Motion shall be filed with the Bankruptcy Court and served on all parties in interest herein on or before on or before May 11, 2011 at 4:00pm

7. If the date to perform any act or the date of any deadline set forth in this Order does not fall on a business day, then the date to perform such act or the date of such deadline shall be deemed to be the next business day.

8. Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be immediately effective and enforceable upon its entry.

9. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order, the interpretation of this Order or both.

Dated: April 25, 2011
Wilmington, Delaware

                                            MARY F. WALRATH
                                            UNITED STATES BANKRUPTCY JUDGE