

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| In re: | Chapter 11 |
|---|---|
| NEW STREAM SECURED CAPITAL, INC., *et al.*,[1] | Case No. 11-10753 (MFW)<br>(Jointly Administered) |
| Debtors. | Re: Docket No. ___ |

## ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2002, 6004 and 6006 (A) AUTHORIZING INSURANCE PORTFOLIO SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN EXECUTORY CONTRACTS; (C) APPROVING FORM AND MANNER OF NOTICE; AND (D) GRANTING RELATED RELIEF

New Stream Secured Capital, Inc., New Stream Insurance, LLC ("NSI"), New Stream Capital, LLC and New Stream Secured Capital, L.P. (collectively, the "Debtors"), having hereby moved (the "Motion") this Court for entry of an order under sections 105(a), 363(b)(1) and 365(a) and (f) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 6004-1 and 9013-1 of the Local Bankruptcy Rules for the District of Delaware (the "Local Bankruptcy Rules"), *inter alia*, (A) authorizing the Debtors to sell a portfolio of life insurance settlement contracts and premium finance loans owned by NSI, as more fully described and defined in the Purchase Agreement (as defined below) as the "Conveyed Property" (the "Insurance Portfolio") pursuant to the terms of an Asset Purchase Agreement, dated March 12, 2011, by and among NSI, Limited Life Assets Master Limited ("LLA Master"), and Limited

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: New Stream Secured Capital, Inc. (3903), New Stream Insurance, LLC (6966), New Stream Capital, LLC (0364) and New Stream Secured Capital, L.P. (2948). The corporate address of the Debtors is 38C Grove Street, Ridgefield, CT 06877.

Life Assets Services Limited (together with LLA Master, the "Purchasers"), a copy of which was annexed to the Motion as Exhibit B, as subsequently amended and modified by, *inter alia*, that certain *Order Approving Stipulation Resolving Certain Objection to (A) Motion of Debtors for Entry of Order (I) Approving Debtor-In-Possession Financing Pursuant To 11 U.S.C. §§ 105(A), 362, and 364 and Fed. Bankr. P. 2002, 4001 and 9014 And Local Bankruptcy Rule 4001-2; (II) Authorizing Use of Cash Collateral Pursuant To 11 U.S.C. §§ 105, 361, 362 and 363 of the Bankruptcy Code;(III) Granting Adequate Protection and Superpriority Administrative Claims; (IV) Scheduling A Final Hearing; And (V) Granting Related Relief and (B) Debtors' Motion For Entry of an Order (I) Approving Bid Incentives, Including Break-Up Fee, and (II) Granting Related Relief* [D.I. 263] (the "Stipulation and Order") (such purchase agreement as so amended or modified, the "Purchase Agreement"), free and clear of all claims (as defined in section 101(5) of the Bankruptcy Code) and any other interests, liens, mortgages, pledges, security interests, rights of first refusal, obligations and encumbrances of any kind whatsoever; and, the Motion having come to be heard by this Court on the 16th day of May, 2011 (the "Sale Hearing"); and after hearing the Motion and the Court having found that it has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Motion is a core proceeding under 28 U.S.C. § 157(b); and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and upon the record herein; and it appearing that the relief requested by the Motion is in the best interest of the Debtors' estates, the Debtors' creditors and other parties-in-interest; and after due deliberation and sufficient cause appearing therefor;

**IT IS ORDERED THAT**:

1. The Motion is GRANTED.

2. All objections, if any, to the Motion or to the relief requested therein that have not been withdrawn, waived or settled are hereby overruled on the merits.

3. Pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, NSI is authorized to sell the Insurance Portfolio to the Purchasers pursuant to the terms of the Purchase Agreement. Upon entry of this Order, no consents or approvals of any persons or entities are required in order for NSI to consummate the sale and transfer of the Insurance Portfolio, or any portion thereof, to the Purchasers in accordance with the Purchase Agreement and this Order (the "Sale").

4. Pursuant to section 363(b) of the Bankruptcy Code, NSI is hereby authorized, directed and empowered to fully perform under, consummate and implement the Purchase Agreement, and to execute all additional instruments and documents that may be necessary, desirable or appropriate to implement the Purchase Agreement, and NSI is authorized to take all further actions as may reasonably be required by the Purchasers for the purpose of assigning, transferring, granting, and conveying to the Purchasers or reducing to possession, any or all of the Insurance Portfolio, or as may be necessary, desirable or appropriate to the performance of NSI's obligations as contemplated in the Purchase Agreement or pursuant to this Order.

5. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the closing of the Sale of the Insurance Portfolio to the Purchasers (the "Closing"), the Sale will be a legal, valid and an effective transfer of the Insurance Portfolio to the Purchasers and vest the Purchasers with good and marketable title to the Insurance Portfolio free and clear of all (i) mortgages, interests, deeds of trust, security interests, hypothecations, pledges, liens (as such term is defined in section 101(37) of the Bankruptcy Code), judgments, rights of use, rights of first offer or rights of refusal, easements, servitudes, restrictive covenants, covenants, rights of

way, restrictions (whether on voting, sale, transfer, disposition, or otherwise), leases, licenses, charges, options and other rights of ownership, and all other encumbrances of every type and description whether imposed by law, agreement, understanding or otherwise (the foregoing collectively referred to as "Encumbrances"), including, without limitation, all Encumbrances that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Purchasers' interests in the Insurance Portfolio, or any similar rights, and (ii) all debts arising in any way in connection with any acts of NSI or any of the other Debtors, all claims (as such term is defined in section 101(5) of the Bankruptcy Code and including any claims against the Purchasers, any of Purchasers' properties or the Insurance Portfolio based on a theory of successor liability or any similar theory), obligations, demands, guarantees, options, rights, torts, contractual or other commitments, restrictions and interests of any kind and nature, whether imposed by agreement, understanding, law, equity or otherwise, which arise on or prior to the Closing or otherwise relate to any acts or omissions of NSI or any of the other Debtors existing on or prior to the Closing of whatever kind, type, nature or description, whether known or unknown, direct or indirect, contingent or fixed, choate or inchoate, matured or unmatured, liquidated or unliquidated and whether arising by agreement, statute, law or otherwise (the foregoing collectively referred to as "Claims"). Such Encumbrances and Claims shall attach to the proceeds derived from the Sale of the Insurance Portfolio with the same validity, enforceability, priority, force and effect that they now have as against the Insurance Portfolio.

6. As of the Closing, all persons and entities holding Encumbrances and/or Claims, and their respective successors and assigns, are hereby forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Encumbrances and Claims of any kind and nature against the Purchasers, its successors or assigns, or the Insurance Portfolio.

7. Each of NSI's creditors asserting an Encumbrance or Claim against or in the Insurance Portfolio is authorized and directed to cooperate with NSI and promptly execute all such documents and take all other actions as may be necessary, or which are reasonably requested by NSI, to release its Encumbrances or Claims on or against the Insurance Portfolio; provided, that the failure of any such creditors to comply with the provisions of this paragraph shall in no way limit the release and termination of any such Encumbrances or Claims against the Insurance Portfolio as provided by this Order.

8. Each and every governmental agency or department is directed to accept for recordation any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

9. The Purchasers are not a successor entity to the Debtors, the Debtors' estate, or the claims or liabilities of either and are not assuming any of the Debtors' claims, liabilities or obligations as a result of the Sale other than those which are expressly assumed under the Purchase Agreement.

10. Without limiting any other provision of this Order, neither the Purchasers nor the Insurance Portfolio shall be responsible, obligated or liable in any way for any taxes (whether federal, state or local) due and payable by NSI or any of the other Debtors or which may at any time become due and payable by NSI or any of the other Debtors and the Purchasers shall acquire the Insurance Portfolio at closing free and clear of any Encumbrances or Claims relating to such taxes. The foregoing shall not constitute an exemption pursuant to 11 U.S.C. § 1146(a).

11. Article 6 of the Uniform Commercial Code governing Bulk Sale Transfers is not applicable to the Sale of the Insurance Portfolio pursuant to this Order.

12. This Order (a) is and shall be effective as a determination that all Encumbrances and Claims have been unconditionally released, discharged and terminated as to the Insurance Portfolio and the Purchasers (and their successors and assigns) as of the Closing, and that the conveyance of the Insurance Portfolio described herein has been effected, and (b) is and shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments in or to any of the Insurance Portfolio.

13. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances or Claims on or in the Insurance Portfolio shall not have delivered to NSI prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances of Claims or other interests that the person or entity has with respect to the Insurance Portfolio, then (a) NSI is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Insurance Portfolio and (b) the Purchasers are hereby authorized to file, register, or otherwise record a certified copy of this Order which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances and Claims and other interests of any kind or nature whatsoever in the Insurance Portfolio.

14. This Court shall retain jurisdiction (i) to enforce and implement the terms and provisions of this Order, the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, (ii) to compel delivery of the Insurance Portfolio to the Purchasers, (iii) to compel delivery of the purchase price, (iv) to resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided herein, (v) to interpret, implement and enforce the provisions of this Order, and (vi) to protect the Purchasers from and against any Encumbrances or Claims against the Debtors or the Insurance Portfolio.

15. The Purchasers are not assuming, nor shall they in any way whatsoever be liable or responsible, as a successor or otherwise, for any liabilities, debts, commitments or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed or otherwise) of NSI or any of the other Debtors, or any liabilities, debts, commitments or obligations in any way whatsoever relating to or arising from the Insurance Portfolio or the Debtor's use of the Insurance Portfolio on or prior to the Closing, or any such liabilities, debts, commitments or obligations that in any way whatsoever relate to periods on or prior to the Closing, or any liabilities calculable by reference to NSI or any of the other Debtors or their assets or operations, or relating to continuing conditions existing on or prior to the Closing, which liabilities, debts, commitments and obligations are hereby deemed extinguished as against the Purchasers and the Insurance Portfolio (but not, as may be applicable, against NSI or any of the other Debtors, any other person or entity or any assets, other than the Purchasers and the Insurance Portfolio) insofar as they may give rise to successor or similar liability as against the Purchasers and/or the Insurance Portfolio, without regard to whether the claimant asserting any such liabilities, debts, commitments and obligations has delivered to the Purchasers a release

thereof. Without limiting the generality of the foregoing, except to the extent, if any, expressly provided in the Purchase Agreement, the Purchasers shall not be liable or responsible, as successor or otherwise, for the NSI's or any other Debtors' liabilities, debts, commitments or obligations arising prior to, on or after the Closing and under or in connection with (a) any employment or labor agreements, consulting agreements or severance pay, (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs including, without limitation, any pension plan of the Debtor, (c) the cessation of any Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to any statutes or otherwise, (d) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (e) any bulk sales and similar law, (f) any liabilities, debts, commitments or obligations of NSI or any other Debtor for any taxes relating to the Debtor's business or the Insurance Portfolio for or applicable to the pre-Closing tax period, and (g) any litigation including, but not limited to, litigation instituted against NSI or any of the other Debtors.

16. Nothing contained in any plan of reorganization or liquidation confirmed in this case or the order of confirmation confirming such plan shall conflict with or derogate from the provisions of the Purchase Agreement or this Order.

17. The Purchasers are good faith purchasers of the Insurance Portfolio under section 363(m) of the Bankruptcy Code and they are each entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

18. The terms and provisions of the Purchase Agreement, together with the terms and provisions of this Order, shall be binding in all respects upon, and shall inure to the benefit of,

the Debtors, their estates and creditors, notwithstanding any subsequent appointment of any trustee (or similar person) for the Debtors under any chapter of the Bankruptcy Code, as to which trustee (or similar person) such terms and provisions likewise shall be binding in all respects.

19. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the provisions thereof with advance reasonable notice to counsel for the Official Committee of Unsecured Creditors, without further notice to or order of the Court, provided that any such modification, amendment or supplement is not material.

20. The failure specifically to include any particular provision of the Purchase Agreement or any related agreements, documents or other instruments in this Order shall not diminish or impair the efficacy of such provision, it being the intent of, and it is hereby ordered by, the Court that the Purchase Agreement be and is authorized and approved in all respects, as amended and modified by the Stipulation and Order, in its entirety.

21. The assumption by the Debtors and assignment to the Purchasers of the executory contracts identified in Schedule I to the Motion (the "Assigned Contracts") represents the reasonable exercise of sound business judgment by the Debtors.

22. The Debtors have, or will have as of the date of the assumption and assignment of the Assigned Contracts to the Purchasers: (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the date hereof, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from any default with respect to the Assigned Contracts. Based on the evidence adduced at the Sale Hearing, the Purchasers have provided adequate assurance of future

performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code, to the extent that any such assurance was required and not waived by any counterparties to any Assigned Contracts, and no consents of any persons or entities to the assumption and assignment of the Assigned Contracts is hereby necessary or required and any such assertions by any persons or entities are hereby dispensed with.

23. The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order are hereby waived, and this Order shall be effective immediately upon entry hereof.

24. The Debtors are authorized to assume, and to assign each of, the Assigned Contracts to the Purchasers in connection with the closing of the Sale of the Insurance Portfolio.

25. The Debtors are hereby authorized and directed to take all actions reasonable and necessary, or reasonably requested by the Purchasers, to effectuate the terms of the Purchase Agreement, or any related agreements, documents or other instruments, and the transactions contemplated thereunder and the provisions of this Order, all without the necessity of any further order of this Court.

Dated: May 16, 2011
Wilmington, Delaware

Mary F. Walrath
United States Bankruptcy Judge