**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:                                    )        Chapter 11
                                          )
NEW STREAM SECURED CAPITAL INC.,          )        Case No. 11-10753 (MFW)
et al.,                                   )
                                          )
                    Debtors.              )
_____)


**MEMORANDUM OPINION**

Before the Court is the Motion of Prime Asset Funding GP,
LLC ("PAF") to strike or deny the Debtors' objection to its
claim, as well as the Cross-Motion of Michael Buenzow, as the
Plan Administrator for the Debtors, for summary judgment on the
Debtors' objection to PAF's claim.  Also before the Court is the
Motion of the Plan Administrator for referral of this matter to
mediation.  For the reasons set forth below, the Court will deny
the Motion to Strike and the Cross-Motion for Summary Judgment
and will grant the Motion for Mediation.


I.   BACKGROUND

The Debtors[1] are a group of investment companies that
managed a number of investment funds.  Prime Asset Funding I, LLC
(the "PA Fund") was a direct subsidiary of NSSC.  NSC was the

_____

    [1]  The Debtors in this case are New Stream Secured Capital,
Inc. ("NSSC"), New Stream Capital LLC ("NSC"), New Stream Secured
Capital L.P., and New Stream Insurance ("NSI").

1

managing member of the PA Fund.  PAF was also a member of the PA Fund and served as its investment manager.

PAF's relationship with NSSC, NSC, and the PA Fund was originally governed by an LLC Operating Agreement and a Management Agreement dated November 2005.  The Management Agreement provided, inter alia, that PAF, as the investment manager of the PA Fund, was to receive Profit Sharing Fees.  The Management Agreement further provided that such fees would continue to be paid to PAF if the Management Agreement was terminated by the PA Fund.  After the PA Fund began making investments in early 2006, PAF received Profit Sharing Fees until early 2008.

On January 11, 2008, the PA Fund notified PAF of its intent to terminate the Management Agreement.  By contract dated February 26, 2008 (the "Termination Agreement"), PAF agreed to termination of the Management Agreement effective April 11, 2008, as well as to the sale of PAF's membership interest in the PA Fund to New Stream Real Estate, LLC ("NSRE"), an affiliate of the Debtors.  The Termination Agreement included a general release of any and all existing claims between PAF and the PA Fund and any of its affiliates (including the Debtors).  The Termination Agreement also reserved the right of PAF to continue receiving the Profit Sharing Fee for investments held in the PA Fund at the time of termination, as provided in the Management Agreement.

2

On March 13, 2011, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On or about May 10, 2011, PAF filed proofs of claim against NSSC, NSC, and NSI seeking Profit Sharing Fees due to PAF under the Management Agreement and Termination Agreement, as well as damages for tort claims.

The Debtors filed an objection to PAF's claim.  A hearing was held on July 29, 2011, on certain issues presented by the claim objection.  At the July 29 hearing, the Court rejected the Debtors' argument that PAF had released its tort claim in the Termination Agreement, holding that PAF had stated a plausible tort claim against the Debtors for claims arising after the Termination Agreement was executed.

On April 23, 2012, the Court entered an Order confirming the Debtors' Second Amended Joint Plan of Reorganization (the "Plan").  In settlement of PAF's objections to the Plan, the Plan established a $1.8 million reserve for any allowed claims of PAF.

In discovery related to its claim, PAF noticed the depositions of former officers of the Debtors (Gillies, Pereira, and Bryson), along with three other witnesses.  The Plan Administrator informed PAF that the proposed witnesses intended to assert their Fifth Amendment rights against self-incrimination, and thereafter filed a motion, inter alia, seeking an order delaying the depositions of the Debtors' former

employees and officers pending an ongoing criminal investigation.
After considering arguments of the parties, the Court granted the
requested relief by Order dated December 21, 2012.

On February 22, 2013, the federal government indicted three
of the Debtors' former officers (Bryson, Pereira, and Bart
Gutekunst) for securities, mail, and wire fraud conducted in
connection with the Debtors' investment activities.  A civil
action was also filed by the SEC on February 26, 2013, against
NSC, New Stream Capital (Cayman) Ltd, Bryson, Getekunst, Pereira,
and another former officer, Tyra Bryson, alleging securities
fraud.

On December 12, 2013, PAF filed the Motion to Strike the
Debtors' claim objection.  On January 13, 2013, the Plan
Administrator filed his Response along with the Cross-Motion
seeking summary judgment on the claim objection.  Briefing on the
Motion to Strike and on the Cross-Motion was completed on
February 14, 2014.  On February 17, 2014, the Plan Administrator
filed a motion requesting that the contested matters be referred
to mediation.  Briefing on the mediation request was completed on
February 26, 2014.[2]  These matters are now ripe for decision.

---

[2]  Despite the conclusion of briefing, PAF has sent several
letters to the Court "advising" it of developments in the
criminal case, necessitating responses from the Plan
Administrator.  While interesting, the updates were not really
relevant to the matters before the Court for the reasons
explained in footnote 4.

II.    <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this core proceeding.  28 U.S.C. § 1334(b) & § 157(b)(2)(B).


III.  <u>DISCUSSION</u>

The Debtors objected to PAF's claim on the basis that: (1) the proofs of claim did not create a prima facie claim in tort against any of the Debtors; (2) PAF had released any claims against the PA Fund and the Debtors; (3) the PA Fund's profits were below the threshold at which a Profit Sharing Fee would be due to PAF; and (4) the Debtors had no contractual obligations to PAF for the Profit Sharing Fee.  The first two bases of the claim objection were disposed of by the Court's decision at the July 29 hearing.

A.    <u>PAF's Motion to Strike the Claim Objection</u>

PAF's Motion to Strike is based on Rule 12(f) of the Federal Rules of Civil Procedure.  Although Rule 7012 of the Federal Rules of Bankruptcy Procedure incorporates Rule 12 in adversary proceedings, Rule 9014 does not make it applicable to contested matters, such as the instant objection.  Even if Rule 12(f) were applicable, it only allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike under Rule 12(f) are disfavored."  <u>Fesnak and Assocs., LLP</u>

5

v. U.S. Bank Nat'l Ass'n, 722 F. Supp. 2d 496, 502 (D. Del.
2010).  Unless the insufficiency of a claim is clearly apparent,
a court should not strike it.  Symbol Techs., Inc. v. Aruba
Networks, Inc., 609 F. Supp. 2d 353, 356 (D. Del. 2009).  A
motion to strike a defense must be denied "if the defense is
sufficient under law."  Fesnak & Assocs., 722 F. Supp. 2d at 502.

In this case, PAF's motion does not allege any reason why
the Debtors' defenses to its claim would fail as a matter of law.
Rather, PAF presents evidence supporting its claim and alleges
that the Debtors have not, and cannot, produce admissible
evidence supporting their arguments against PAF's claim, citing
Rule 56 of the Federal Rules of Civil Procedure,[3] which is
applicable to motions for summary judgment.  Therefore, to the
extent that PAF's motion to strike is based on the substantive
arguments of the claim objection, the Court will treat it as a
motion for summary judgment.

B.   Summary Judgment

The Plan Administrator argues that it is entitled to summary
judgment on its Claim Objection because: (1) there is no Profit
Sharing Fee due to PAF for 2008; (2) even if such a fee were owed
to PAF, PAF would have a claim only against the PA Fund and not
against the Debtors; and (3) PAF has no claim against the Debtors

---

[3]  Rule 9014 of the Federal Rules of Bankruptcy Procedure
does incorporate Rule 56 of the Federal Rules of Civil Procedure
in contested matters.

for tort damages.  The Plan Administrator additionally argues
that summary judgment cannot be granted for PAF because discovery
is not yet complete and the Plan Administrator has not been able
to depose PAF's principal, Frank Harrison.

PAF responds that it is owed Profit Sharing Fees for the
year 2008 based on calculations from the PA Fund's own financial
statements.  PAF also alleges that these fees can be collected
from all of the Debtors based on (1) the Debtors' tortious
actions in preventing PAF from being paid by the PA Fund and (2)
the lack of corporate separateness between the Debtors and the PA
Fund.  PAF submits that the Plan Administrator does not, and
cannot, produce admissible evidence supporting its arguments
against PAF's claim and that the Claim Objection must, therefore,
be denied.

1.   Standard of Review

A claimant must allege facts sufficient to support a legal
basis for the claim.  If the claim meets this standard, the claim
is prima facie valid under Rule 3001(f) of the Federal Rules of
Bankruptcy Procedure.   In re Allegheny Int'l, Inc., 954 F.2d
167, 173 (3d Cir. 1992); In re Planet Hollywood Int'l, 274 B.R.
391, 394 (Bankr. D. Del. 2001).

If an objection is filed, "the objecting party bears the
initial burden of presenting sufficient evidence to overcome the
presumed validity and amount of the claim."  Planet Hollywood

7

Int'l, 274 B.R. at 394.  See also In re Smith, 249 B.R. 328, 332-33 (Bankr. S.D. Ga. 2000) (citations omitted) ("if the objecting party overcomes the prima facie validity of the claim, then the burden shifts to the claimant to prove its claim by a preponderance of the evidence").

The Court should grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment under Rule 56, the Court must view the inferences from the record in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hollinger v. Magner Mining Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981).  If there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, the Court must enter judgment in the movant's favor.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

The movant bears the burden of establishing that no genuine issue of material fact exists.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1985); Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Grp.,

8

Inc.), 377 B.R. 471, 475 (Bankr. D. Del. 2007). If the moving party offers only speculation and conclusory allegations in support of its motion, its burden of proof is not satisfied. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). A fact is material when it could "affect the outcome of the suit." Anderson, 477 U.S. at 248.

Once the moving party has established its prima facie case, the party opposing summary judgment must go beyond the pleadings and point to specific facts showing there is a genuine issue of fact for trial. See, e.g., id. at 252; Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000); Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 164 (3d Cir. 1999).

### 2.   The Profit Sharing Fee

Under the Management Agreement and the Termination Agreement, PAF was owed a Profit Sharing Fee in the amount of 50% of the PA Fund's net profit "in excess of a . . . Hurdle Rate, and in excess of a High Water Mark at the end of each calendar year." The Management Agreement defined the "Hurdle Rate" as "a 12% Net Profit of the Fund expressed as a percentage of Equity, prorated for capital contributions and withdrawals, for that accounting period." The "High Water Mark" was defined as "the Equity value (according to GAAP) of the Fund at the time the most recent Profit Sharing Fee was charged against the Fund, reduced

by the amount of such Profit Sharing Fee, and adjusted for capital contributions and withdrawals."

Using financial data provided by the Debtors in discovery, PAF calculates that it was owed a profit sharing fee for the first half of 2008 in the amount of $1,405,239, comprised of $574,290 (50% of the Net Profit for the PA Fund in excess of the 12% Hurdle Rate through September 2008) and $830,949 (50% of the Net Profit through September 2008 exceeding the High Water Mark. PAF was paid $19,562 for its Profit Sharing Fee in July of 2008. Therefore, PAF asserts that it is owed a remainder of $1,385,677 plus interest.

PAF also alleges that it is owed an additional $1,046,755 (plus interest) in Profit Sharing Fees for the latter half of 2008 for Net Profit in excess of the High Water Mark. This claim is based on the withdrawal of $2,093,510 in assets from the PA Fund by the Debtors between September and October 2008. PAF argues that the effect of such a withdrawal was to reduce the High Water Mark to a negative $2,135,727.

The Plan Administrator alleges that the PA Fund was not profitable enough in 2008 for PAF to have been owed a Profit Sharing Fee. In support of his position, the Plan Administrator filed the affidavit of Tim Leonard, former controller for NSC,[4]

---

[4]  PAF argues that the Leonard Affidavit is inadmissible because it is hearsay and because Leonard invoked his Fifth Amendment privilege against self-incrimination when he testified

financial records for the PA Fund through July 2008, and a summary of the PA Fund's calculations of the Profit Sharing Fee through December 2008.

The Plan Administrator's calculations differ from those of PAF primarily as a result of the Plan Administrator's inclusion of a "Hurdle Deficit," which it subtracts from the amount of income in excess of the Hurdle Rate. The Plan Administrator alleges that this aspect of the fee calculation was necessary to avoid overpayment of Profit Sharing Fees based on the overall yearly performance of the PA Fund. The records on which the Plan Administrator relies were provided to PAF in August 22, 2008, to support the $19,562 Profit Sharing Fee paid to PAF at that time. Additionally, the Plan Administrator argues that PAF's calculation of the fee for months after July 2008 is not based on actual financial data from the PA Fund, but instead on assumed financial performance numbers.

In reply, PAF argues that the Hurdle Deficit concept is improperly included in the Plan Administrator's calculation

---

in connection with the SEC lawsuit against NSC in August 2012. The Court finds that the Leonard Affidavit is based on personal knowledge and therefore will not exclude it on hearsay grounds. Furthermore, the Court concludes that Leonard's prior invocation of his Fifth Amendment rights does not preclude him from testifying in this matter. See S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 193 (3d Cir. 1994) (holding that witnesses who previously asserted their Fifth Amendment rights were improperly precluded from later waiving those rights where such waiver did not prejudice the opposition).

because it was not part of the Management Agreement's definition of the Profit Sharing Fee.  PAF also argues that, even if the Hurdle Deficit should be included, it is calculated incorrectly: the 2007 Profit Sharing Fee calculation shows a year-end Hurdle Deficit of $1,143,220.63 (the amount of Hurdle Deficit carried into 2008), but also shows a year end "Income in Excess/(Deficit)" of the Hurdle Rate of negative $395,388.37.  If the $395,388.37 amount is used instead of the $1,143,220.63, a higher Profit Sharing Fee would be due than the $19,561.67 calculated by the Plan Administrator.  PAF finally asserts that, even if proper, the Hurdle Deficit carried as of 2007 was a claim released by the Termination Agreement along with any other pre-existing claims between PAF and the PA Fund or the Debtors and, therefore, should not be carried into 2008 to calculate that year's profit sharing fee.

The Plan Administrator argues that the concept of a Hurdle Deficit is implicit in the terms of the Management Agreement and as confirmed by the conduct of the parties.  <u>Pepsi-Cola Bottling Co. Of Asbury Park v. Pepsico, Inc.</u>, 297 A.2d 28, 33 (Del 1972).  Although Hurdle Deficit is not defined in the Management Agreement, the column for a Hurdle Deficit was included on the PA Fund calculations of Profit Sharing Fees throughout the relationship with PAF.

PAF responds that the Hurdle Deficit in the forms was

12

originally included to address a one-time issue created by a loan closing and was never intended to be part of the normal Profit Sharing Fee calculation.

Given the contradictory evidence presented by the parties, the Court finds that there are genuine issues of material fact regarding the amount, if any, due to PAF for the 2008 Profit Sharing Fee, thereby precluding summary judgment on that issue.

### 3.    Liability of the Debtors

PAF alleges that the Debtors can be held liable for any Profit Sharing Fee owed to it by the PA Fund for two reasons: (1) the Debtors tortiously interfered with the contract between PAF and the PA Fund, and (2) the corporate veil should be pierced.

### a.    Tortious Interference with Contract

There are five elements to a claim for tortious interference with contract: (1) the existence of a contract; (2) the defendant was aware of the contract; (3) the defendant acted intentionally to cause a breach of the contract; (4) a lack of justification; and (5) injury.  Aspen Advisors LLC v. United Artists Theater Co., 861 A.2d 1251, 1265-66 (Del. 2004).

The existence of a contract between PAF and the PA Fund is not at issue nor is the Debtors' awareness of the contract.  PAF argues that the remaining factors are met by (1) the Debtors' intentional revision of investment documents to show no Profit Sharing Fees are due to PAF and (2) the Debtors' removal of funds

13

from the PA Fund to pay redemption demands for its other
investment funds, thereby depriving PAF of a fee due on those
funds or their investment earnings.

PAF has provided evidence of various transfers from the PA
Fund accounts into accounts held by NSC, tracing these funds to
other Debtors' accounts.  The Plan Administrator does not dispute
that cash was transferred from the PA Fund to the Debtors'
accounts.  The Plan Administrator argues, however, that these
fund transfers were part of the Debtors' cash management system,
through which funds were swept daily from the PA Fund accounts to
NSSC, which transferred cash back to the PA Fund based on its
needs.

The Court concludes that genuine issues of material fact
remain as to whether the transfers from the PA Fund to the
Debtors caused the PA Fund to breach its contract with PAF.

      b.   Piercing the Corporate Veil

To state a claim against the Debtors for piercing the
corporate veil, PAF must establish that the PA Fund and the
Debtors "operated as a single economic entity" and that a "an
overall element of injustice or unfairness is present." Burtch
v. Opus, LLC (In re Opus East, LLC), 480 B.R. 561, 570 (Bankr. D.
Del. 2012).  The determination of whether two corporations are a
"single economic entity" is based on several factors: "(1)
undercapitalization; (2) failure to observe corporate

14

formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders." Id.

PAF rests its claim for piercing the corporate veil on the Debtors' activities, the commingling of funds between the PA Fund and the Debtors, and the overall management of the PA Fund by NSC.  PAF submits as evidence the affidavit of the Debtors' former officer Perry Gillies,[5] which it asserts contains admissions that the Debtors operated as a single economic entity, with redemptions being paid without regard to legal ownership.

The Plan Administrator disputes these facts and the conclusion that the Debtors and the PA Fund operated as one economic entity, relying on the Leonard Affidavit.

The Court finds that there is a genuine issue of material fact (based on the conflicting affidavits) as to whether the Debtors and the PA Fund operated as a single economic entity. Therefore, the Court cannot grant summary judgment to either party.

---

[5]  That affidavit was filed in the action of BNY AIS Nominees Ltd v. New Stream Capital Fund, Ltd in the Supreme Court of Bermuda. (Case No. 2009: No. 178.)

IV.  **CONCLUSION**

For the foregoing reasons, the Court will deny PAF's Motion to Strike and the Plan Administrator's Cross-Motion for Summary Judgment.  Based on the posture of the case, the Court will grant the Motion to refer the matter to mediation.

An appropriate Order is attached.


Dated: June 10, 2014                    BY THE COURT:



                                        Mary F. Walrath
                                        United States Bankruptcy Judge